**ZENOL, INC.**

v.

**CARBLOX, LTD.**

**Civ. A. No. 71–677.**

United States District Court,
W. D. Pennsylvania.

Dec. 8, 1971.

Thomas Gravina, Pittsburgh, Pa., for plaintiff.

Ralph H. German, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER STAYING ACTION PENDING ARBITRATION

KNOX, District Judge.

On December 1, 1964, the plaintiff, a Pennsylvania corporation, and defendant, a corporation of the United Kingdom entered into an Agency Agreement, designated Exhibit A and attached to the complaint. In this Agreement the plaintiff contracted to act as the defendant's sole agent within a geographic area of the United States for the sale of certain products manufactured by the defendant in the United Kingdom, specifically, carbon bricks and tiles. The Agreement specifically provided [1] that it was to be in effect for a period of two years and was to terminate at the end of that period "or at any time thereafter by not less than three calendar months previous notice in writing given by either party to the other."

On January 4, 1966, the parties, by letter from the defendant [2] renewed the

---

1. Paragraph 2 of Agency Agreement.

2. Exhibit B attached to complaint.

Agreement for a period of two years certain with an agreement for further renewals. The Agreement, as so renewed, remained in effect until March 16, 1971, at which time, the defendant by letter[3] terminated the plaintiff's agency.

On July 21, 1971, the plaintiff instituted an action for damages and an accounting against the defendant. The defendant, referring to paragraph 14 of the Agency Agreement which sets forth an arbitration provision[4] is now requesting that this court stay the action pending such arbitration. However, the plaintiff maintains that its disputes with the defendant are not within the purview of this arbitration provision. Thus, the issues presently before this court for decision are three in number:

1. Whether this court has jurisdiction of the defendant's motion.

2. Whether, under the controlling federal substantive law, the arbitration agreement is enforceable with respect to the claims and issues raised in plaintiff's action.

3. What is the appropriate order?

 This court's jurisdiction is predicated upon the Federal Arbitration Act, as contained in 9 U.S.C. § 1 et seq., which provides for enforcement of arbitration agreements in particular types of transaction. Thus, the stay provisions of Section 3 of the Act are applicable only to contracts specified in Section 2[5] which includes a contract such as the one in the instant case i. e. "a contract evidencing a transaction involving commerce" as "commerce" is defined in Section 1 of the Act.[6] Being an agency contract for the sale of defendant's goods by plaintiff, the goods being made in England and sold in the United States, the contract in issue is clearly one evidencing a transaction involving foreign commerce within the meaning of Sections 1 and 2 of the Arbitration Act. Batson Yarn and Fabrics Machinery Group, Inc. v. Saurer-Allma GmbH-Allgauer Maschinenbau 311 F.Supp. 68 (D. C.S.C.1970); Hilti, Inc. v. Oldach, 392 F.2d 368 (1 Cir. 1968); Necchi Sewing Machine Sales Corp. v. Carl, 260 F.Supp. 665 (S.D.N.Y.1966).

The second issue—whether, under the controlling federal substantive law, the arbitration agreement is enforceable with respect to the claims and issues raised in plaintiff's action—is more troublesome. Having its foundations in the incontestable federal control over foreign commerce, the Federal Arbitration Act is not subject to the challenge that Congress may not fashion federal substantive rules to govern issues arising in simple diversity cases. The proposition that federal substantive law as set forth in the Federal Arbitration Act

---

3. Exhibit C attached to complaint.

4. "If any dispute or difference shall arise between the parties touching the meaning of this Agreement or the construction thereof *of* (sic) any act matter or thing arising thereout the same shall be referred to the arbitration of two persons (one to be appointed by each party to the reference to their umpire) and this shall be deemed to be a submission to arbitration *within the Arbitration Act 1950* or any statutory modification or re-enactment thereof for the time being in force the provisions whereof shall apply as far as applicable." (NOTE: The parties agree that the "Arbitration Act of 1950" referred to is the British Act of that date. There is no Federal or Pennsylvania Arbitration Act of that date.)

5. Bernhardt v. Polygraphic Co. of America, Inc., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

6. " . . . 'commerce' as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

controls the rights of the parties in a Section 3 stay action was approved by the Supreme Court in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), wherein the court suggested that such inquiry be subject to narrow limitations:

". . . in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate. In so concluding, we not only honor the plain meaning of the statute but also the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." Prima Paint, supra, pg. 404, 87 S.Ct. pg. 1806.

Sections 2 and 3 of the Act [7] clearly state the criteria which are to govern our inquiry. Since the plaintiff resists the granting of an order that arbitration proceed, the court under Prima Paint recognizes its duty to make two initial determinations: "First, whether there existed an agreement to arbitrate between the parties, and second, whether the claim or issues raised in the suit were within the scope of such agreement." See also Sumaza v. Cooperative Assn., 297 F.Supp. 345, at page 347 (D. C.P.R.1969).

That an agreement to arbitrate (as embodied in paragraph 14 of the Agency Agreement) existed between the parties in this case is beyond dispute. The paragraph 14 arbitration provision is equal in substance to that held to exist in the Sumaza case, which arose from alleged breach or termination of sole agency agreement by which a Puerto Rican corporation was to distribute a Danish manufacturer's canned meat. Recognizing that agreements to arbitrate need not follow a set phraseology, the Sumaza Court found that the arbitration agreement, embodied in a single paragraph and general in its terms was "an unlimited clause providing for the arbitration of differences eventually arising from the contract." at page 347. The question is whether the claim is on its face covered by the agreement, Galt v. Libbey-Owens-Ford, 376 F.2d 711 (7th Cir. 1967).

■ The fact that the defendant in this action "terminated" the agreement in no way destroys the continuing validity of paragraph 14 or the Agreement as a whole for the purposes of arbitration. In Batson Yarn the defendant likewise terminated the plaintiff's sole agency for the distribution of machinery, whereupon plaintiff brought suit for damages based on the allegedly wrongful termination. The plaintiff objected to defendant's Section 3 motion to stay on the ground that arbitrability of a dispute under a contract providing for arbitration requires demand for arbitration during the term of the contract. After an exhaustive review of the cases on point, the Batson court held that a

7. § 2. "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

§ 3. "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

demand for arbitration prior to termination of the contract is not a condition of arbitrability. Any attempt to deny the existence of the agreement would put the plaintiff in the untenable position of relying on the contract when it works to its advantage and repudiating it when it works to what plaintiff regards a disadvantage.

■ On the second question, i. e., whether the particular claims raised in plaintiff's suit are within the scope of this arbitration clause—the court must reasonably interpret the language of the clause keeping in mind "the federal policy to construe liberally arbitration clauses, to find that they cover disputes reasonably contemplated by this language, and to resolve doubts in favor of arbitration". Metro Industrial Painting Corp. v. Terminal Constr. Co., 287 F.2d 382, at page 385 (2d Cir. 1961).

Only a strained interpretation could lead this court to conclude that this arbitration provision was intended to have the limited scope insisted upon by plaintiff. The language of paragraph 14 reads "any dispute or difference . . . between the parties touching the meaning of this Agreement or the construction thereof *of* (sic) any act matter or thing arising thereout". Were there less verbiage, the plaintiff would no doubt be attempting to impress upon this court the position urged in Sumaza, namely, that the arbitration clause is unenforceable as too vague and unreasonable.

■ The defendant clearly "is not in default in proceeding with such arbitration". The defendant was not aware of the dispute until it was served with the complaint on July 21, 1971; whereupon, defendant promptly filed the within Section 3 motion to stay and filed no pleadings. While certain cases have found waiver where defendant has filed pleadings in response to the complaint, "the modern rule, . . ., based on a liberal national policy favoring arbitration, seems to be that waiver or 'default' under the statute may not rest mechanically on some act such as the filing of a complaint or answer but must find a basis in prejudice to the objecting party". Batson Yarn, supra, 311 F.Supp. at page 73. Plaintiff will suffer no prejudice by a stay of its action pending arbitration.

In view of the foregoing, the motion to stay the action pending arbitration must be granted. One further problem remains—what is the appropriate order directing such arbitration? There are numerous instances in which courts, acting under Section 3, have granted stays pending arbitration in a foreign country.[8] The plaintiff must realize that the courts do not write contracts, but merely enforce those made by the parties. Thus, plaintiff, having agreed to arbitrate and be governed by British law, cannot complain that such a result is unfair or burdensome to it.

We have been supplied with a copy of the British Arbitration Act of 1950 [9] referred to in paragraph 14 (Act 14 Geo.

---

8. See: Danielsen v. Entre Rios Rys. Co. (D.C.Md.1927) 22 F.2d 326 (arbitration in England); The Quarrington Court (D.C.N.Y.1938) 25 F.Supp. 665 (arbitration in England); Uniao De Transportadores, etc. v. Companhia DeNavegacao, etc. (D.C.N.Y.1949) 84 F.Supp. 582 (arbitration in Portugal); International Refugee Organization v. Republic S.S. Corp. (D.C.Md.1950) 93 F.Supp. 798, appeal dismissed (4th Cir.) 189 F.2d 858 (arbitration in England); Fox v. The Giuseppe Mazzini (D.C.N.Y.1953) 110 F.Supp. 212 (arbitration in England); Mannesmann Rohrleitungsbau, etc. v. S.S. Bernhard Howaldt (D.C. N.Y.1965) 254 F.Supp. 278, 279 (arbitration in Holland); see Konstantinidis v. S.S. Tarsus (D.C.N.Y.1965) 248

F.Supp. 280, 288, aff. (2d Cir.) 354 F.2d 240; Hilti, Inc. v. Oldach, supra, 392 F.2d 368 (in Puerto Rico proceedings a stay awaiting arbitration in Connecticut was ordered, the court observing that "the assertion that arbitration proceedings cannot be held outside Puerto Rico conflicts with Section 3 of the Federal Arbitration Act which speaks of arbitration 'in accordance with the terms of the agreement'"). Batson Yarn, etc. v. Saurer, etc., supra (Paris).

9. We note that the contract does not specify where it was executed but is witnessed only by a witness resident in Sheffield, Eng. and has a British Internal Revenue stamp affixed.

VI ch. 27). We find nothing therein which requires arbitration to take place in England. We are told it is implicit that the proceedings should be held in England. That, however, is a matter for the British Courts and we would not presume to trespass on their rightful prerogatives.

If it is required to arbitrate in England, plaintiff cannot complain, having agreed to such a result by incorporating the British Arbitration Act in the contract.

Plaintiff argues that under 9 U.S.C. Section 4, we cannot force arbitration out of the district. However this may be, we have no doubt of our authority under the above cases to stay this action pending arbitration under the British Act of 1950 and an appropriate order will be entered.