Sophia **KASTANIAS** and Lawrence Leonardi, Plaintiffs,

v.

**NATIONWIDE AUTO TRANSPORTERS, INC., Defendant.**

Civ. A. No. 74–1112.

United States District Court, W. D. Pennsylvania.

March 5, 1975.

Robert X. Medonis, Pittsburgh, Pa., for plaintiffs.

William J. Lavelle, Pittsburgh, Pa., Gordon H. Marsh, Williamson & Schoeman, New York City, for defendant.

## OPINION AND ORDER

MARSH, Chief Judge.

On July 1, 1972 the plaintiffs, citizens of Pennsylvania, and the defendant, a Delaware corporation with its principal place of business in New Jersey, entered into an "Agency Agreement," a copy of which is attached to the complaint and designated as Exhibit A.[1]

The defendant was in the business of transporting automobiles from one point to another within the continental United States and, by the aforementioned agreement, appointed the plaintiffs as its local agents in the Pittsburgh area. The agreement was to remain in effect for one year and was automatically renewable for each succeeding year as long as the conditions set forth therein were met.

The defendant notified the plaintiffs on or about May 18, 1973 that it had chosen to terminate plaintiffs' agency and did so on June 1, 1973. The plaintiffs allege that they conducted the defendant's business from July 1, 1972 until the termination by the defendant.

On November 14, 1974, plaintiffs filed this diversity action, seeking damages in excess of $10,000, complaining that the defendant unjustly terminated the agreement.

Relying on the broad arbitration clause in paragraph 18 of the agreement, the defendant made a demand for arbitration upon the plaintiffs on December 10, 1974, however, plaintiffs failed to act on this demand. Defendant then asserted plaintiffs' failure to act as an affirmative defense in its answer filed December 13, 1974.

The defendant has now moved the court, pursuant to the Federal Arbitration Act,[2] to stay all further proceedings in the above captioned matter pending the outcome of arbitration under paragraph 18 of the agreement. The court

---

1. Exhibit A creates some doubt as to the actual date of the agreement due to an apparent write-over in the first line.

2. The Federal Arbitration Act in 9 U.S.C. § 3 provides:
   "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

has jurisdiction to decide the motion under 9 U.S.C. § 1 et seq.

The very nature of the interstate automobile transport business, which is the subject of the contract between the parties, indicates that this agreement is one which evidences a transaction involving commerce as defined in 9 U.S.C. § 1. The arbitration clause contained in the agreement is a written provision as contemplated in § 2. Thus, the issues presently before the court are:

I. Is the controversy in this litigation a matter which is subject to arbitration under the agreement?

II. Is the defendant in default in proceeding with arbitration?

## I.

Paragraph 18 of the agreement in question states:

"Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration . . . ."

It would be a difficult task indeed to interpret such broad language so as to exclude therefrom the dispute now before the court, particularly in light of the federal policy favoring arbitration.

■ Plaintiffs argue that once the defendant had terminated the agreement it could no longer use the provisions thereof to demand arbitration. If accepted by the court, this argument would permit the plaintiffs to rely on the contract when it was to their advantage and to repudiate it when they felt it was not to their advantage. See: Zenol, Inc. v. Carblox, Ltd., 334 F.Supp. 866, 869 (W.D.Pa.1971) aff'd 474 F.2d 1338 (3rd Cir. 1973) and cases cited therein. The law in this matter is contrary to the position of the plaintiffs.

Therefore, we find that the issue of unjust termination is one which is subject to arbitration under the agreement.

## II.

■■ The plaintiffs argue that the failure of the defendant to submit the alleged grounds for termination to arbitration places the defendant in default as to an arbitration proceeding.

It should be noted that the issue here is the justice or injustice in the termination itself. Plaintiffs, being the aggrieved party, made no demand for arbitration at the time and have made no showing that any prejudice would result if the matter went to arbitration at this time.

The defendant, on the other hand, had no disagreement with its own action and was under no obligation to seek arbitration for the plaintiffs.

We therefore conclude that the defendant is not in default as to the arbitration. See: Zenol, Inc. v. Carblox, Ltd., *supra*, 334 F.Supp. at p. 869.

In light of the foregoing, the motion to stay proceedings in this case pending the outcome of arbitration must be granted.

■ Defendant has also moved in the alternative to dismiss this action for lack of the minimum jurisdictional amount ($10,000). The plaintiff has not complied with the request of the court to submit an itemization of its damages. However, the general rule is that a district court may not dismiss for lack of jurisdictional amount unless it can find, to a legal certainty, that such amount could not be awarded to the plaintiff. Jaconski v. Avisun Corp., 359 F.2d 931, 934–935 (3rd Cir. 1966). Such can not be said to be the case here based on the present information available to the court.

An appropriate order will be entered.