BECKER AUTORADIO U.S.A., INC.

v.

BECKER AUTORADIOWERK GmbH and Max Egon Becker and Becker Electronics, Inc. and Lothar Amanda and Roland Becker and Mercedes-Benz of North America, Inc.,

Appeal of BECKER AUTORADIOWERK GmbH, Becker Electronics, Inc., Max Egon Becker and Roland Becker, in No. 77–2566.

Appeal of MERCEDES BENZ OF NORTH AMERICA, INC., in No. 77–2567.

Nos. 77–2566, 77–2567.

United States Court of Appeals, Third Circuit.

Argued June 7, 1978.

Decided July 17, 1978.

Norman R. Bradley, Philadelphia, Pa., William Schurtman, Peter R. Engelhardt, New York City, for appellants Becker Auto-radiowerk GmbH, Becker Electronics, Inc., Max Egon Becker and Roland Becker; Saul, Ewing, Remick & Saul, Philadelphia, Pa., Walter, Conston, Schurtman & Gumpel, P. C., New York City, of counsel.

Robert J. Spiegel, Spencer Ervin, Jr., R. Mark Armbrust, Philadelphia, Pa., for appellant Mercedes-Benz of North America, Inc.; Gratz, Tate, Spiegel, Ervin & Ruthrauff, Philadelphia, Pa., of counsel.

Samuel P. Lavine, John P. Quinn, Carl T. Bogus, Steinberg, Greenstein, Gorelick & Price, Philadelphia, Pa., for appellee.

Before ADAMS, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

This appeal concerns the arbitrability of a dispute between defendant Becker Autoradiowerk GmbH ("BAW"), a West German manufacturer of automobile radios and accessories, and plaintiff Becker Autoradio U.S.A., Inc. ("Becker U.S.A."), a Pennsylvania corporation and BAW's exclusive American distributor. The district court denied BAW's motion to stay judicial proceedings and compel arbitration. We reverse.

### I

On July 1, 1974, BAW entered into a written, two-year Exclusive Distribution Agreement (the "1974 Agreement") with Becker U.S.A.[1] This contract, written in German and subscribed to in Ittersbach, West Germany, granted Becker U.S.A. the exclusive right to sell Becker automobile radios and accessories (art. 1). The 1974 Agreement provided for termination on June 30, 1976 (art. 11(1)). The contract also provided in article 11(5) that:

In the event that the parties to the agreement should wish to extend the collaboration beyond June 30, 1976, this shall be subject to negotiations not later than 6 months prior to the expiration of the agreement.

Becker U.S.A. and BAW engaged in extensive negotiations concerning renewal of the 1974 Agreement, but were unable to agree on terms, and the contract apparently expired on June 30, 1976.

On February 1, 1977, Becker U.S.A. commenced this diversity action against BAW, Becker Electronics, Inc. (a Delaware subsidiary of BAW), Max Egon Becker and Roland Becker (representatives of BAW), Lothar Amanda (Executive Vice President of Becker Electronics), and Mercedes Benz of North America, Inc. (a customer of BAW). Count II of the amended complaint (the only count directly relevant to this appeal) alleged that BAW, through its representatives Max Egon Becker and Roland Becker, orally promised that BAW would renew the 1974 Agreement "on the same terms as the existing [*i. e.*, the 1974] Agreement" for a five year term, provided that plaintiff fulfill certain conditions, *viz* (1) continue to promote satisfactorily the sales of BAW radios; (2) open a branch office in Chicago; (3) establish at its expense Becker radio exhibits during 1975 and thereafter; and (4) perform without compensation certain administrative functions for Becker Electronics' avionics division in Paramus, New Jersey. Becker U.S.A. further alleged that, relying on these assurances, it performed these tasks, but that its distribution rights were not renewed.[2]

All the defendants moved, under the federal Arbitration Act, 9 U.S.C. §§ 3 and 206, to stay Becker U.S.A.'s action in the district

---

1. In 1961, BAW granted exclusive distribution rights to another corporation organized by Louis von Witte. When von Witte became ill, his business was run primarily by Grida Kriese, a long time employee. Von Witte died in 1973. On June 21, 1974, Kriese purchased von Witte's business from the executor of his estate. On June 27, 1974, Kriese formed the plaintiff Becker Autoradio U.S.A. Kriese executed the 1974 Agreement acting for Becker U.S.A.

2. Count II is an alternative pleading to Count I, which is asserted against Max Egon Becker and Roland Becker as individuals, and which alleged the same facts as Count II. Count I asserted that the two Beckers did *not* have the

authority to make the representations which plaintiff claims they made.

Count II, on the other hand, presumed that the Beckers did have such authority, and sought relief against BAW. Count II, therefore, sounds in promissory estoppel or breach of an oral contract.

Count III of the amended complaint, asserted against all the defendants, alleged that the defendants permitted certain fraudulent practices to be perpetrated against owners of Mercedes automobiles in the United States, and that Mercedes Benz of North America, Lothar Amanda, and Becker Electronics (BAW's subsidiary) induced BAW to breach its promise to continue plaintiff's exclusive distribution rights.

court and to compel arbitration. BAW relied on article 13(2) of the 1974 Agreement, which provided:

> The Arbitration Court domiciled in Karlsruhe [Federal Republic of Germany] shall have sole jurisdiction with regard to all disputes arising out of and about this agreement. The Arbitration Court shall determine its procedures according to the Rules of Procedure of the International Chamber of Commerce, Paris. The arbitral award shall have the effect, with respect to the parties, of a legally valid court judgment.[3]

Article 13(2) also gave BAW (but not Becker U.S.A.) the option of suing in court for breach instead of submitting the dispute to arbitration. Under this provision if BAW elected to sue in court, it was required to do so in a court in the United States and subject to American law. Additionally, article 13(2) contains an express covenant by Becker U.S.A. not to "bring suit against BAW, based on any alleged claim whatsoever under this agreement before any court other than the arbitration court in Karlsruhe."

The other defendants have contended that if a stay pending arbitration were granted as to BAW on Count II, the proceedings on Counts I and III should be stayed as well. On appeal Becker U.S.A. "does not take issue with the request of all defendants that should the action against BAW be stayed pending arbitration, the entire action be stayed." Appellee's Brief at 16 n.5.

■ In support of their motion, the defendants argued before the district court that the dispute was one "arising out of and about" the 1974 Agreement and was therefore governed by the arbitration clause, and that consequently they were entitled to a stay by reason of § 9 and § 206 of the Arbitration Act.[4] The district court disagreed. In an opinion and order dated October 5, 1977, the district court denied the motion for a stay,[5] ruling that BAW's alleged obligation to renew the distribution agreement arose not from the 1974 Agreement, but rather from a separate and distinct oral agreement.[6] The court held that disputes arising out of this independent oral contract were not subject to the arbitration clause of the 1974 Agreement. All the defendants except Amanda have appealed.[7]

---

3. The Agreement also provided that it was to be governed by German law. Art. 13(1).

4. Those provisions provide:

    *Stay of proceedings where issue therein referable to arbitration*

    If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

    9 U.S.C. § 3.

    *Order to compel arbitration; appointment of arbitrators*

    A Court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement.

    9 U.S.C. § 206.

5. In the same opinion and order, the district court denied the individual Beckers' motion to dismiss, and granted Amanda's motion to dismiss. These aspects of the order are, of course, not appealable at this time, as they are not final, and no Fed. R. Civ. P. 54(b) certification was made.

6. The district court recognized that if the controversy were governed by the arbitration clause in the 1974 Agreement, the court would have been compelled to stay the proceedings.

7. In an action for money damages, an order denying a stay of judicial proceedings pending arbitration and refusing to compel arbitration is appealable pursuant to 28 U.S.C. § 1292(a)(1) as an order denying injunctive relief. *Gavlik Construction Co. v. H. F. Campbell Co.*, 526 F.2d 777 (3d Cir. 1975); *McCreary Tire & Rubber Co. v. CEAT, SpA*, 501 F.2d 1032, 1034–35 (3d Cir. 1974). *See, e. g., Ettelson v. Metropolitan Life Ins. Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942); *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); *Zell v. Jacoby-Bender, Inc.*, 542 F.2d 34 (7th Cir. 1976); *Kavit v. A. L. Stamm & Co.*, 491 F.2d 1176, 1181 (2d Cir. 1974); *Warren*

## II

### A

There has been much discussion by the parties concerning the applicability of German law or Pennsylvania law in the resolution of this dispute. It may well be that the question of which law is to be applied will have to be answered in deciding the merits of the underlying controversy. However the case before us presents only the issue of the *arbitrability* of that controversy. When a contract involves "commerce", as this one does, whether a "suit or proceeding is referable to arbitration . . . under an agreement [to arbitrate]" pursuant to the federal Arbitration Act, 9 U.S.C. § 3, or to the Convention on Recognition and Enforcement of Foreign Arbitral Awards, Art. II, ¶ 3 and 9 U.S.C. § 206, is clearly a matter of federal substantive law. Thus, the question of whether, in contracts involving commerce, there is an agreement to arbitrate an issue or dispute upon which suit has been brought is governed by federal law. Concomitantly, questions of interpretation and construction of such arbitration agreements are similarly to be determined by reference to federal law. *See Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos*, 553 F.2d 842, 845 n.4 (2d Cir. 1977); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 404–05 (2d Cir. 1959), *cert. granted*, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, *cert. dismissed*, 364 U.S. 801,

81 S.Ct. 27, 5 L.Ed.2d 37 (1960); *Singer Co. v. Tappan Co.*, 403 F.Supp. 322, 328–29 (D.N.J.1975); *Litton, RCS, Inc. v. Pennsylvania Turnpike Commission*, 376 F.Supp. 579, 585 (E.D.Pa.1974), *aff'd*, 511 F.2d 1394 (3d Cir. 1975); *Bigge Crane and Rigging Co. v. Docutel Corp.*, 371 F.Supp. 240 (E.D. N.Y.1973); *Aberthaw Construction Co. v. Centre County Hospital*, 366 F.Supp. 513, 514 (M.D.Pa.1973), *aff'd*, 503 F.2d 1398 (3d Cir. 1974). As the court in *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir. 1972), stated, "[o]nce a dispute is covered by the [federal Arbitration] Act, federal law applies to all questions of [the arbitration agreement's] interpretation, construction, validity, revocability, and enforceability." *Cf. The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 97 S.Ct. 1907, 32 L.Ed.2d 513 (1970); *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

It is true that, if the parties agree that certain disputes will be submitted to arbitration and that the law of a particular jurisdiction will govern the resolution of those disputes, federal courts must effectuate that agreement. *See Scherk v. Alberto-Culver, Inc.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). *Cf. The Bremen v. Zapata Off-Shore Co., supra.* However, whether a particular dispute is within the class of those disputes governed by the arbitration and choice of law clause is a matter of federal law.[8] *See Coenen v. R. W. Pressprich & Co., supra*, at 1211.[9]

---

*Bros. Co. v. Cardi Corp.*, 471 F.2d 1304 (1st Cir. 1973).

8. For example, consider the case where a contract containing an arbitration clause provides that the law of state X shall govern the agreement. Assume that the law of state X will not enforce, or gives very limited effect to arbitration clauses, such that under X law the dispute would not be submitted to arbitration. If one party sues on the contract in federal court, and the contract involves "commerce", the federal district court, in deciding a motion to stay the proceedings and compel arbitration under 9 U.S.C. § 3, would look to federal law in determining the scope of the arbitration clause.

9. Becker U.S.A. cites *Cook v. Kuljian Corp.*, 201 F.Supp. 531 (E.D.Pa.), *supplementary op.*, 209 F.Supp. 478 (E.D.Pa.1962), *aff'd*, 317 F.2d 412 (3d Cir. 1963) (per curiam), for the contrary proposition. In that diversity case the court held that the question of the enforceability of an arbitration award in a contract made and performed in India was a choice of law question governed by Pennsylvania's choice of law rules. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under those rules, the court held that Indian law (the locus contractus) governed the arbitration clause. Significantly, however, the court in *Cook* held that the arbitration agreement before it did "*not* relate to a mari-

### B

■ We now turn to the central issue in this case: whether the dispute between plaintiff and BAW concerning an alleged renewal of the 1974 Agreement is a dispute "arising out of and about" that Agreement, and is therefore arbitrable under article 13 of the Agreement.[10] According to Becker U.S.A. (with whom the district court agreed), this case does not involve any breach of the 1974 Agreement, or any right or obligation stemming from that Agreement. Becker U.S.A. argues that the 1974 Agreement terminated on June 30, 1976, and has no effect upon the dispute in issue here. Instead, Becker U.S.A. asserts that its claim in this case is wholly independent of the 1974 Agreement, and is based on certain parol representations. These parol representations form the basis for its complaint that BAW has breached its oral contract.

Becker U.S.A. looks to *Korody Marine Corp. v. Minerals & Chemicals Philipp Corp.*, 300 F.2d 124 (2d Cir. 1962) (per curiam), for support. In that diversity case the plaintiff claimed damages for breach of a contract under which the defendant had become its sales and shipping agent. The initial contract, which expired by its terms on December 31, 1960, contained an arbitration clause. The matter in issue was whether or not the defendant *thereafter—i. e.*, at some time subsequent to the expiration of the contract—agreed to continue the contract in effect, so that the arbitration clause would apply to the disputed transactions, all of which occurred *after* December 31, 1960. The district court found that the parties had *not* agreed to renew the contract, and the Second Circuit accepted that factual conclusion, holding that arbitration under the agreement was not available. In

so holding, the court stated that the "fact that the parties continued to deal under some sort of informal arrangement does not mean that the terms of the expired formal contract continued to apply." 300 F.2d at 125. Thus the court of appeals affirmed the district court's denial of a stay pending arbitration.

We believe that *Korody* is distinguishable. *Korody* concerned transactions which occurred subsequent to the expiration of the agreement, which the district court had expressly found had *not* been renewed. Thus it is clear that the terms of that expired agreement—including its arbitration clause—could have no application to the disputed transactions. *See Sears, Roebuck & Co. v. Herbert H. Johnson Association, Inc.*, 325 F.Supp. 1338 (D.P.R.1971). In this case, however, we are dealing with an alleged oral agreement which, if made, was clearly made *prior*[11] to the expiration of the 1974 Agreement, and which relates to a term of that Agreement—*i. e.*, its provisions governing renewal or expiration.

■ There is, of course, a strong policy in the federal courts favoring arbitration, especially in the context of international agreements. *See, e. g., Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *McCreary v. CEAT, SpA, supra.* Arbitration clauses are to be liberally construed, *see Prima Paint Corp. v. Flood & Conklin Manufacturing Co., supra; Singer Co. v. Tappan Co., supra.* Moreover, any "doubts as to whether an arbitration clause may be interpreted to cover the asserted dispute should be resolved in favor of arbitration unless a court can state with 'positive assurance' that this dispute was not meant to be arbitrated." *Hussey Metal Division v. Lectromelt Fur-*

---

time transaction or involve interstate or foreign commerce" and that consequently the federal Arbitration Act was "without application." 201 F.Supp. at 535 (emphasis added).

Here the parties do not dispute that their contract involves "commerce", or that the federal Arbitration Act applies to article 13(2) of that contract. Thus *Cook* is clearly distinguishable from this case.

10. The question of the arbitrability of a dispute is, of course, a question for the court to decide. *See, e. g., International Bhd. of Teamsters v. Western Pennsylvania Motor Carriers Assn.*, No. 77–1764, 574 F.2d 783 (3d Cir. 1978); *Bieski v. Eastern Automobile Forwarding Co.*, 396 F.2d 32 (3d Cir. 1968).

11. *See* Amended Complaint ¶¶ 13, 14, 16, Appendix at 104a–105a.

*nace Division,* 471 F.2d 556, 558 (3d Cir. 1972) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). *See also Gateway Coal Co. v. Mine Workers,* 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *International Brotherhood of Teamsters v. Western Pennsylvania Motor Carriers Association,* 574 F.2d 783 (3d Cir. 1978); *Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123 (3d Cir. 1969). Given this policy, and this standard of arbitrability, we are obliged to disagree with the district court's conclusion that Becker U.S.A.'s claimed contract renewal is not arbitrable, inasmuch as we do not think it can be said with "positive assurance" that this dispute does not "arise out of" the 1974 Agreement.

■ The controversy in this case centers on whether BAW agreed to extend the 1974 Agreement beyond its 1976 expiration date. This purported extension promise was made while the 1974 Agreement was in effect, and was allegedly conditioned on the performance of various tasks, all but one of which related to the subject matter of the 1974 Agreement (*i. e.,* the distribution in the United States of Becker radios).[12] The extension was alleged to have been on the same terms as the 1974 Agreement.[13] Indeed, accepting Becker U.S.A.'s version of the existence and terms of the oral agreement, it would appear that the only change

required in the 1974 Agreement would be the substitution of the expiration date in article 11(1). As we understand Becker U.S.A.'s position, the alleged oral agreement would substitute the date of June 30, 1981, for the expiration date of June 30, 1976. All other terms of the 1974 Agreement would be carried forward and would continue in effect until 1981, including, we surmise, the arbitration clause itself. In this context, where the entire original agreement would be included "lock, stock and barrel" in the extended agreement, we find it difficult to understand how a dispute concerning the termination and renewal clause of that agreement (*see* article 11, paragraphs 1, 2 and 5 of the 1974 Agreement[14]) did not "arise out of" or is not "about" the 1974 Agreement.

Becker U.S.A.'s complaint, although couched in terms of "assurances" which purportedly were made by BAW's representatives, reveals essentially a process of *negotiation* by which BAW allegedly agreed to continue Becker U.S.A.'s exclusive distribution rights (*i. e.,* the 1974 Agreement) beyond June 30, 1976, and by which Becker U.S.A. agreed to perform certain tasks. We are unable to distinguish this process from that which the parties envisaged when they agreed to article 11(5) of the 1974 Agreement. In that provision (which is quoted at note 14) the parties contemplated that negotiations for renewal, if desire, would take place prior to the Agreement's

---

**12.** Of the four "conditions precedent" to the alleged five year extension of the distributorship, only one—performance of certain administrative tasks for Becker Electronics—was unrelated to the distribution of Becker radios. The other "conditions"—continued satisfactory promotion of BAW radio sales, opening a branch office in Chicago, and establishing and financing Becker radio exhibits—clearly were so related.

**13.** Amended Complaint ¶ 20, Appendix at 106a.

**14.** Those paragraphs of article 11 provide:
1. The Distribution Agreement is concluded for a firm period of 2 years, starting as of July 1, 1974. It thus shall terminate as of June 30, 1976.
2. The Agreement may be terminated without notice, if an important (weighty) ground obtains.

For BAW, an important (weighty) ground for termination of the agreement shall be deemed to obtain in particular, if composition proceedings are instituted (including out-of-court arrangements) against the Representative's assets, or bankruptcy proceedings are started, or if the Representative suspends payments or is in default, or if the Representative should not be in a position to fulfill his obligations as set forth in this agreement over a longer period of time and for whatever reason.

5. In the event that the parties to the agreement should wish to extend the collaboration beyond June 30, 1976, this shall be subject to negotiations not later than 6 months prior to the expiration of the Agreement.

termination. Thus the subject of termination and renewal of the 1974 Agreement was dealt with in the contract itself. Any dispute with respect to termination or renewal, therefore, would clearly seem to arise out of the contract.

The fact that there may have been a separate consideration for the claimed renewal does not alter our conclusion. We obviously do not, and should not, decide whether there was separate consideration, and if so its significance. Nor should we decide whether in fact BAW made the alleged representations, or whether Becker U.S.A. performed in accordance with and in reliance on those representations. Neither do we decide whether an alleged oral agreement to extend the contract could be valid under article 14 of the Agreement (which provides that all amendments and additions must be in writing). In fact we do not treat with any matter related to the purported oral agreement because that task is reserved for the arbitrator. It is for the arbitrator specified in the parties' agreement, not for a court, to resolve all such matters between the parties, inasmuch as each of these disputes is implicated in the 1974 Agreement, and arises out of, or is about, that Agreement. Thus it is for the arbitrator and not a court to determine whether that Agreement has been extended. Our task is completed once we determine that the dispute "arises out of" or is "about" the 1974 Agreement.

Whatever may be the case in a circumstance where no provision concerning termination and renewal is found in the contract, we are satisfied that where the parties have foreseen and provided for a process for renewing their agreement, a dispute such as this one relating to renewal "arises out of" the agreement and is therefore clearly within the scope of the arbitration clause. There is no question in our minds, for example, that, had a dispute arisen whereby BAW refused to extend the Agreement, claiming that negotiations had not begun "6 months prior to [its] expiration," and Becker U.S.A. claimed to the contrary, such a dispute would have been undeniably within the arbitrator's jurisdiction. Just so, in this dispute concerning the "negotiations" leading to the renewal asserted by Becker U.S.A. and denied by BAW, the parties must submit to the arbitrator's jurisdiction.

We conclude, therefore, that the issues here presented "arise out" of the 1974 Agreement in that they all arose in the course of and during the on-going relationship between Becker U.S.A. and BAW, which relationship was created and governed by the 1974 Agreement. Moreover, those issues in general concern matters related to the distributorship of Becker radios, and in particular concern the procedures contemplated by the parties to extend their relationship.

We find support for our conclusion in two analogous, although admittedly distinguishable, cases. In *Zenol, Inc. v. Carblox, Inc.*, 334 F.Supp. 866 (W.D.Pa.1971), aff'd, 474 F.2d 1338 (3d Cir. 1973), and *Kastanias v. Nationwide Auto Transporters, Inc.*, 390 F.Supp. 720 (W.D.Pa.1975), the defendants sought to stay the proceedings and compel arbitration pursuant to broadly worded arbitration clauses. Both cases involved exclusive sales agency contracts which either were automatically renewable (*Kastanias*), or continued beyond the expiration date (*Zenol*), unless notice of termination was given by one of the parties. In both cases the sales agent sued when the "principal" terminated, and in both cases the plaintiffs claimed that the termination was wrongful. Both courts held that the termination did not destroy the continuing validity of the arbitration clause, see 334 F.Supp. at 868, and that the dispute (*i. e.*, the wrongfulness *vel non* of the termination) was within the scope of the broad language of the arbitration clauses. *See Batson Yarn and Fabrics Machinery Group, Inc. v. Saurer-Allma GmbH*, 311 F.Supp. 68 (D.S.C.1970). *See also Sumaza v. Cooperative Association*, 297 F.Supp. 345 (D.P.R.1969). It is true that *Zenol* and *Kastanias* dealt with the termination of "automatically renewable" contracts, and thus provide a stronger case than this one for holding that the dispute arose out of the contract. Nonetheless, we view those cases as at least standing for the proposition that disputes involving the ter-

mination or continuation of contracts are properly arbitrable when renewal or expiration is the subject of specific contract provisions.

In sum: given the strong federal policy favoring arbitration; given the broad language of the arbitration clause in this case; given the fact that this dispute concerns the continuation or termination of the 1974 Agreement and the Agreement itself includes provisions relevant to renewal; given that the issues here derive from the relationship created from that Agreement; and recognizing that doubts are to be resolved in favor of arbitration unless we can state with "positive assurance" that arbitration of the dispute was not intended by the parties (an assurance which is not present in this case), we conclude that the dispute here presented is arbitrable under article 13 of the 1974 Agreement.[15]

### III

The order of the district court denying a stay pending arbitration will be reversed, and the case will be remanded with the direction that the district court stay the proceedings before it pending arbitration, and order that the dispute be submitted to the Arbitration Court domiciled in Karlsruhe, Federal Republic of Germany in accordance with the parties' Agreement.

15. It is apparent by our disposition that there is no viability to Becker U.S.A.'s argument concerning choice of law. *See* Part II–A of this opinion, *supra.*

Becker U.S.A.'s alternate argument is that, because BAW had the option of bringing suit against Becker U.S.A. in an American court, as well as invoking the arbitration clause and submitting the dispute to arbitration in Germany, while Becker U.S.A. had no such choice, the arbitration clause in the 1974 Agreement is unenforceable and void as contrary to public policy. This argument is without merit. We know of no such doctrine of complete mutuality as a matter of federal law (*see* Part II–A of this opinion, *supra*), and, because Becker U.S.A.'s argument has no support in logic, reason or precedent, we decline the invitation to adopt such a principle. Moreover, even if such a doctrine requiring complete mutuality existed, we observe that here BAW is not invoking its right to sue, but rather is seeking arbitration.

In any event, even if we were attracted (which we are not) to the concept purportedly found in the New York appellate division cases

cited by Becker U.S.A., *see Kaye Knitting Mills v. Prime Yarn Co.*, 37 A.D.2d 951, 326 N.Y.S.2d 361 (1971) (per curiam); *Hull Dye & Print Works, Inc. v. Riegel Textile Corp.*, 37 A.D.2d 946, 325 N.Y.S.2d 782 (1971) (per curiam), those cases are clearly distinguishable from the one *sub judice.* Both *Kaye* and *Hull* involved contracts which gave one part a unilateral right to invoke arbitration (while the other party could not require arbitration). Under the New York arbitration statute, New York courts are empowered to enforce only contracts to arbitrate. *See* N.Y. C.P.L.R. §§ 7501 *et seq.* (McKinney). Contracts to arbitrate, within the meaning of the statute, have been held by the New York courts to exist—*i. e.* to require a party to submit to arbitration—only when that party has a *duty* to arbitrate. In *Hull* and *Kaye* the party resisting arbitration was not required by the contract to submit, nor could it compel, arbitration. Here, in contrast, Becker U.S.A. had the power to invoke arbitration, at least if BAW has not yet exercised its option to sue in an American court.