RHONE MEDITERRANEE COMPAGNIA FRANCESE DI ASSICURAZIONI E RIASSICURAZONI, Appellant,

v.

Achille LAURO, d/b/a Achille Lauro Armatore, a/k/a Achille Lauro, d/b/a Flotta Lauro, a/k/a Achille Lauro, d/b/a Lauro Lines, X Company and Antonio Scotto di Carlo.

No. 82–3523.

United States Court of Appeals, Third Circuit.

Argued April 27, 1983.

Decided July 6, 1983.

John G. Short, Charlotte Amalie, V.I., David C. Indiano, San Juan, P.R. (argued), Dudley, Dudley & Topper, Charlotte Amalie, St. Thomas, V.I., for appellant.

Thomas D. Ireland, Charlotte Amalie, St. Thomas, V.I., Richard G. Ashworth (argued), Charles B. Anderson, Haight, Gardner, Poor & Havens, New York City, for appellee.

Before GIBBONS, SLOVITER and BECKER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Rhone Mediterranee Compagnia Francese di Assicurazioni E Riassicurazioni (Rhone), a casualty insurer, appeals from an order of the District Court of the Virgin Islands staying Rhone's action pending arbitration. The action results from a fire loss which occurred when the vessel Angelina Lauro burned at the dock of the East Indian Co. Ltd. in Charlotte Amalie, St. Thomas. At the time of the fire the vessel was under time charter to Costa Armatori S.P.A. (Costa), an Italian Corporation. Rhone insured Costa and reimbursed it for property and fuel losses totaling over one million dollars. Rhone, as subrogee of Costa, sued the owner of the vessel, Achille Lauro (Lauro), and its master, Antonio Scotto di Carlo, alleging breach of the Lauro-Costa time charter, unseaworthiness, and negligence of the crew. The district court granted defendants' motion for a stay of the action pending arbi-

tration, and Rhone appeals.[1] The defendants have moved to dismiss the appeal for lack of an appealable order. We hold that we have appellate jurisdiction, and we affirm.

## I. Appellate Jurisdiction

■ The defendants' motion to dismiss Rhone's appeal is predicated on *Schoenamsgruber v. Hamburg American Line,* 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989 (1935), which holds that a district court order staying an admiralty suit pending arbitration is an interlocutory order for purposes of the predecessor to 28 U.S.C. § 1291 (1976), and is not an injunction within the meaning of the predecessor to 28 U.S.C. § 1292(a) (1976). The Court reasoned:

> While courts of admiralty have capacity to apply equitable principles in order to better attain justice, they do not have general equitable jurisdiction and, ... they do not issue injunctions.

*Id.* at 457–58, 55 S.Ct. at 476–77 (footnotes omitted). For this reason stays of admiralty actions have been held not to fall within the well-settled *Enelow-Ettelson* rule[2] that a stay of an action at law is the equivalent of an injunction against proceeding with that action, appealable under 28 U.S.C. § 1292(a). *Diacon-Zadeh v. Denizyollari,* 196 F.2d 491, 492 (3d Cir.1952) (per curiam); 9 J. Moore, B. Ward, & J. Lucas, Moore's Federal Practice ¶ 110.19[3] (2d ed. 1983).

The *Schoenamsgruber* rule does not apply in this case, however, because Rhone sues for breach of a time charter agreement. The District Court of the Virgin Islands, a court of general jurisdiction, can entertain actions at law which, despite their connection with maritime commerce, fall within the saving to suitors clause in 28 U.S.C. § 1333(a) (1976). An action for breach of a time charter agreement may be brought in personam in a law court. *E.g., Carich v. Rederi A/B Nordi,* 389 F.2d 692, 695 (2d Cir.1968) (underlying action for violation of

1. The district court opinion is reported at 555 F.Supp. 481 (D.V.I.1982).

2. *Ettelson v. Metropolitan Life Ins. Co.,* 317 U.S 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942); *Enelow v. New York Life Ins. Co.,* 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935).

a charter party is at law and stay order is appealable); *Mailloux v. Elxnit,* 7 Alaska 192 (1924) (action for money due for a charter is a common law action in contract). Such an action may be brought in admiralty, but may also be brought as an ordinary civil action in law in a court of general jurisdiction. G. Gilmore & C. Black, The Law of Admiralty, § 1–13 at 40 (2d ed. 1975). This being so, appealability is controlled by cases such as *J. & R. Sportswear & Co. v. Bobbie Brooks, Inc.,* 611 F.2d 29 (3d Cir.1979) (denial of stay of breach of contract action for money damages is appealable); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH,* 585 F.2d 39, 42 n. 7 (3d Cir.1978) (denial of stay of action alleging breach of agreement to renew franchise appealable); *Gavlik Construction Co. v. H.F. Campbell Co.,* 526 F.2d 777, 781–82 (3d Cir.1975) (stay of action for services under contract is appealable); and *McCreary Tire & Rubber Co. v. CEAT,* 501 F.2d 1032, 1034–35 (3d Cir.1974) (denial of stay of action seeking money damages appealable).

## II. The Merits

█ As subrogee, Rhone stands in place of its insured, the time charterer Costa. In the time charter contract there is a clause:

23. *Arbitration*

Any dispute arising under the Charter to be referred to arbitration in London (or such other place as may be agreed according to box 24) one arbitrator to be nominated by the Owners and the other by the Charterers, and in case the Arbitrators shall not agree then to the decision of an Umpire to be appointed by them, the award of the Arbitrators or the Umpire to be final and binding upon both parties.

*Box 24*

Place of arbitration (only to be filled in if place other than London agreed (cl. 23) NAPOLI

All the parties to the time charter agreement and the lawsuit are Italian. Italy and the United States are parties to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997; reprinted following 9 U.S.C.A. §§ 201–208 (1983 Supp.). The Federal Arbitration Act, Pub.L. No. 91–368, 84 Stat. 692 (1970) (codified at 9 U.S.C. §§ 201–208 (1976)), implements the United States' accession on September 1, 1970 to the Convention by providing that it "shall be enforced in United States courts in accordance with this chapter." 9 U.S.C. § 201. That act further provides:

An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial . . . falls under the Convention.

9 U.S.C. § 202. The same section exempts from the Convention agreements or relationships entirely between citizens of the United States. That exemption does not apply. Thus by virtue of the Federal Arbitration Act the arbitration clause in the time charter falls within the Convention's coverage. Rhone does not contend otherwise.

What Rhone does contend is that under the terms of the Convention the arbitration clause in issue is unenforceable. Rhone's argument proceeds from a somewhat ambiguous provision in Article II section 3 of the Convention:

The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

Ambiguity occurs from the fact that no reference appears in section 3 to what law determines whether "said agreement . . . is null and void, inoperative or incapable of being performed."

Rhone contends that when the arbitration clause refers to a place of arbitration, here Naples, Italy, the law of that place is determinative. It then relies on the affidavit of an expert on Italian law which states that in Italy an arbitration clause calling for an even number of arbitrators is null and void,

even if, as in this case, there is a provision for their designation of a tie breaker.

The ambiguity in Article II section 3 of the Convention with respect to governing law contrasts with Article V, dealing with enforcement of awards. Section 1(a) of Article V permits refusal of recognition and enforcement of an award if the "agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made." Section 1(e) of Article V permits refusal of recognition and enforcement if "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." Section 1(d) of Article V permits refusal of enforcement if "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place." Thus Article V unambiguously refers the forum in which enforcement of an award is sought to the law chosen by the parties, or the law of the place of the award.

Rhone and the defendants suggest different conclusions that should be drawn from the differences between Article II and Article V. Rhone suggests that the choice of law rule of Article V should be read into Article II. The defendants urge that in the absence of a specific reference Article II should be read so as to permit the forum, when asked to refer a dispute to arbitration, to apply its own law respecting validity of the arbitration clause.

There is some treaty history suggesting that a proposal to incorporate in Article II choice of law language similar to that in Article V was rejected because delegates to the United Nations organization which drafted it were concerned that a forum might then have an obligation to enforce arbitration clauses regardless of its "local" law. G. Haight, *Convention on the Recognition and Enforcement of Foreign Arbitral Awards: Summary Analysis of Record of U.N. Conference,* May/June 1958 at 27–28. It thus appears that the ambiguity in Article II section 3 is deliberate. How it should be resolved has been a matter of concern to commentators, who suggest, variously, that the forum state should look to its own law and policy, to the rules of conflicts of laws, or to the law of the place of execution of the agreement. *See, e.g.,* P. Sanders, *A Twenty Years' Review of the Convention on Recognition and Enforcement of Foreign Arbitral Awards,* 13 Int'l Law. 269, 278 (1979) (criticizing ambiguity); S. Pisar, *The United Nations Convention on Foreign Arbitral Awards,* 33 So.Cal.L.Rev. 14, 16 (1959) (Section 3 refers to conflict of laws); Quigley, *Accession By The United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards,* 70 Yale L.J. 1049, 1064 (1961) (Section 3 permits examination of forum law and policy); Contini, *International Commercial Arbitration,* 8 Am.J. Comp.L. 283, 296 (1959) (since Section 3 is silent courts may make determination on basis of forum law including forum choice of law).

None of the limited secondary literature sheds so clear a light as to suggest a certain answer. However, we conclude that the meaning of Article II section 3 which is most consistent with the overall purposes of the Convention is that an agreement to arbitrate is "null and void" only (1) when it is subject to an internationally recognized defense such as duress, mistake, fraud, or waiver, *see Ledee v. Ceramiche Ragno,* 684 F.2d 184 (1st Cir.1982); *I.T.A.D. Associates, Inc. v. Podar Brothers,* 636 F.2d 75 (4th Cir.1981), or (2) when it contravenes fundamental policies of the forum state. The "null and void" language must be read narrowly, for the signatory nations have jointly declared a general policy of enforceability of agreements to arbitrate. As the Supreme Court observed in *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 507 n. 10, 94 S.Ct. 2449, 2451 n. 10, 41 L.Ed.2d 270 (1974):

The goals of the Convention, and the principal purpose underlying American

adoption and implementation of it, was to encourage the recognition and enforcement of commercial contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

In other words, signatory nations have effectively declared a joint policy that presumes the enforceability of agreements to arbitrate. Neither the parochial interests of the forum state, nor those of states having more significant relationships with the dispute, should be permitted to supersede that presumption. The policy of the Convention is best served by an approach which leads to upholding agreements to arbitrate. The rule of one state as to the required number of arbitrators does not implicate the fundamental concerns of either the international system or forum, and hence the agreement is not void.

▇ Rhone urges that this rule may result in a Neopolitan arbitration award which, because of Italy's odd number of arbitrators rule, the Italian courts would not enforce. The defendants insist that even in Italy this procedural rule on arbitration is waivable and a resulting award will be enforced. Even if that is not the law of Italy, however, Rhone's objection does not compel the conclusion that we should read Article II section 3 as it suggests. The parties did agree to a non-judicial dispute resolution mechanism, and the basic purpose of the Convention is to discourage signatory states from disregarding such agreements. Rhone is not faced with an Italian public policy disfavoring arbitration, but only with an Italian procedural rule of arbitration which may have been overlooked by the drafters of the time charter agreement. Certainly the parties are free to structure the arbitration so as to comply with the Italian procedural rule by having the designated arbitrators select a third member before rather than after impasse. Even if that is not accomplished an award may still result, which can be enforced outside Italy.

Rhone urges that Article V section 1(d) prohibits such enforcement outside Italy, because it refers a non-Italian forum to the law of Italy. We disagree. Section 1 says only that "enforcement of an award *may* be refused" on the basis of the law of the country where it was made. Where, as here, the law of such a country generally favors enforcement of arbitration awards, and the defect is at best one of a procedural nature, Article V, section 1 certainly permits another forum to disregard the defect and enforce. That is especially the case when defendants come before the court and, relying on Article II, seek a stay of the action in favor of arbitration. They will hardly be in a position to rely on Italy's odd number of arbitrators rule if Rhone seeks to enforce an award in the District Court of the Virgin Islands.[3]

The forum law implicitly referenced by Article II section 3 is the law of the United States, not the local law of the Virgin Islands or of a state. That law favors enforcement of arbitration clauses. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *Becker Autoradio U.S.A. Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39 (3d Cir.1978). Indeed, "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. Such an action would be removable from a state court. 9 U.S.C. § 205. The removal section has no application, of course, to the District Court of the Virgin Islands, which exercises the jurisdiction of the United States District Courts in all cases arising under the treaties and laws of the United States. 48 U.S.C. § 1612 (1976 & Supp. V 1981). Since *no federal law imposes an odd number of arbitrators rule*—the only defect relied upon by Rhone—the district court did not err in staying the suit for breach of the time

---

**3.** Had Rhone so requested it would have been proper for the district court to condition its stay order on the defendants' agreement to reform the arbitration clause so as to satisfy Italy's procedural requirement. Since no such request was made we do not consider whether, had it been made, we would remand for such a modification.

charter agreement pending arbitration. Moreover since the duty to provide a seaworthy vessel and to operate it non-negligently arises out of the charter relationship, it was proper to stay the entire case.

### III.  Conclusion

The order staying the action in the District Court of the Virgin Islands was in compliance with the Convention and with the law of the United States.  It will be in all respects affirmed.