

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-1-1999

# Harris v. Green Tree Fin Corp

Precedential or Non-Precedential:

Docket 97-2029

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"Harris v. Green Tree Fin Corp" (1999). *1999 Decisions.* Paper 186.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/186

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 1, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 97-2029/98-1018

CHARLES HARRIS; CHRISTINE HARRIS;
WILLIE DAVIS; NORA WILSON, on behalf of themselves
and all others similarly situated

v.

GREEN TREE FINANCIAL CORPORATION;
GREEN TREE CONSUMER DISCOUNT COMPANY;
LAWRENCE M. COSS; FREDMONT BUILDERS;
P. ANGELO & SONS INC; FRANK R. LUCCI, JR.;
TYRONE DENITTIS

       Green Tree Financial Corporation,
       Green Tree Consumer Discount Company,
       Lawrence M. Coss,
       Appellants in 97-2029

       Frank R. Lucci, Jr.,
       Tyrone DeNittis,
       Appellants in 98-1018

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 97-cv-01128)
District Judge: Honorable John P. Fullam

Argued September 17, 1998

Before: STAPLETON and ROTH, Circuit Judges, and
HOEVELER,[1] District Judge
_____

1. Honorable William M. Hoeveler, United States District Court Judge for
the Southern District of Florida, sitting by designation.

(Opinion filed: July 1, 1999)

Jeffrey L. Kodroff, Esquire
Anthony Chu, Esquire
Spector & Roseman, P.C.
2000 Market Street, 12th Floor
Philadelphia, PA 19103

Michael D. Donovan, Esquire
 (Argued)
David A. Searles, Esquire
Donovan Miller, LLC
1608 Walnut Street, Suite 1400
Philadelphia, PA 10103

Kenneth A. Jacobsen, Esquire
Chimicles, Jacobsen & Tikellis
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041-0100

Kenneth I. Trujillo, Esquire
Trujillo, Rodriguez & Richards, LLC
226 West Rittenhouse Square
The Penthouse
Philadelphia, PA 19103

 Attorneys for Appellees
Charles Harris; Christine Harris;
Willie Davis; Nora Wilson

David H. Pittinsky, Esquire (Argued)
Alan S. Kaplinsky, Esquire
Burt M. Rublin, Esquire
Martin C. Bryce, Jr., Esquire
Ballard Spahr Andrews & Ingersoll,
 LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599

 Counsel for Green Tree Financial
Corporation; Green Tree Consumer
Discount Company; Lawrence M.
Coss: Appellants in 97-2029 and
Appellees in 98-1018

Jeffry S. Pearson, Esquire
Solomon, Berschler, Warren, Schatz
 & Flood, P.C.
522 Swede Street
Norristown, PA 19401

 Attorneys for Frank R. Lucci, Jr.;
Tyrone Denittis: Appellees in
97-2029 and Appellants
in 98-1018

Jeffrey S. Saltz, Esquire
Law Office of Jeffrey S. Saltz, P.C.
1515 Market Street, Suite 1000
Philadelphia, PA 19102

 Attorney for Amici-Appellants
 in 97-2029

Cathy Ventrell-Monsees, Esquire
Deborah M. Zuckerman, Esquire
AARP Foundation Litigation
601 E. Street, N.W.
Washington, D.C. 20049

 Attorneys for Amici-Appellees
 American Association of Retired
 Persons; National Association of
 Consumer Advocates; National
 Consumer Law Center; Public
 Citizen, Inc.

Alan M. White, Esquire
Irv Ackelsberg, Esquire
Community Legal Services, Inc.
Law Center North Central
3638 North Broad Street
Philadelphia, PA 19140

 Attorneys for Amicus-Appellee
 Consumer Education Protective
 Association, Inc. in 97-2029

3

OPINION OF THE COURT

ROTH, Circuit Judge:

In this action, we consider the District Court's denial of
a motion to compel arbitration and stay proceedings
pending arbitration. We exercise jurisdiction over this
matter under the Federal Arbitration Act ("FAA" or the
"Act"), 9 U.S.C. S et seq., which permits appeal as a matter
of right from orders denying motions to compel arbitration.
Since this appeal presents a legal question concerning the
applicability and scope of an arbitration agreement, our
standard of review is plenary. See Pritzker v. Merrill Lynch,
7 F.3d 1110, 1113 (3d Cir. 1993). Because we find the
arbitration clause at issue in this case enforceable, we will
reverse the order of the District Court, denying the motion
to compel arbitration.

I. Factual and Procedural Background

This action was filed in the United States District Court
for the Eastern District of Pennsylvania on February 14,
1997, by Charles Harris, Christine Harris, Willie Davis, and
Nora Wilson (collectively, the "Harrises"). 2 The Harrises
claim to be victims of a fraudulent home improvement
scheme. This scheme allegedly was orchestrated and
perpetrated by Green Tree Financial Corporation ("Green
Tree"); Green Tree's subsidiary, Green Tree Consumer
Discount Company ("GT Discount"); Lawrence M. Coss, the
Chief Executive Officer of Green Tree; and several building
contractors. These contractors include Fredmont Builders,
P. Angelo & Sons, Inc., Frank R. Lucci, Jr., and Tyrone
DeNittis.3

The home improvement scheme of which the Harrises
claim to be victims worked as follows. Using direct
_____

2. The Harrises sought class certification and thus are putative class
members.

3. Together with Green Tree and GT Discount, defendants Coss, Lucci,
and DeNittis appeal the District Court's decision.

4

marketing techniques, Green Tree allegedly recruited dozens of home improvement contractors, including those identified above. These contractors allegedly were enlisted for the purpose of obtaining high-interest rate secondary mortgage contracts from homeowners, which were to be sold and assigned to Green Tree or GT Discount. Green Tree allegedly instructed the contractors to obtain such mortgages by, inter alia: marketing themselves as Federal Housing Authority ("FHA") and U.S. Department of Housing and Urban Development ("HUD") approved home improvement dealers; targeting relatively unsophisticated, low- to middle-income, senior citizens; promising that the work would be performed at an affordable cost and that no payment would be required until the customer was satisfied completely with the workmanship; using standardized loan contracts that were generated by Green Tree or GT Discount; inserting a clause in these contracts that allowed the mortgagee to charge exorbitant amounts for collateral protection insurance ("CPI"); and employing high-pressure sales tactics to solicit customers, such as in-home sales and telemarketing. Cmplt. PP 1, 3, 9.

The contractors allegedly used all of these strategies in soliciting the Harrises. Cmplt. PP 29, 37-39, 50, 62. After the Harrises agreed to the home improvement work described by the relevant contractor in his sales presentation, the contractor allegedly presented to them several standardized loan contracts, including a secondary mortgage contract ("the standard form contract"). Cmplt. PP 4, 15, 40-45, 51-52, 66. The Harrises claim that they were told that they had to sign these standardized contracts before construction could begin or be completed on their homes; thus, the Harrises signed the forms. Cmplt. PP 46, 51-52, 66. Almost immediately after the loan papers were signed, the contractors allegedly sold and assigned the loans and mortgages to Green Tree or GT Discount. Cmplt. PP 4, 41, 53, 66.

Thereafter, the contractors performed home improvement work on the Harrises' homes. The Harrises contend, however, that the contractors either did not perform the work, specifically promised in the contracts, or performed the promised work, but in an unsatisfactory manner.

5

Cmplt. PP 4, 46, 54-56, 74-75. On numerous occasions, the Harrises allegedly complained to Green Tree about the nature and quality of work performed by these contractors, but to no avail. Cmplt. PP 48, 56 57, 76.

Thus, the Harrises allege that they received little of value from the contractors, yet were saddled with a sizeable debt secured by mortgages on their homes. Cmplt. #9E9E # 4, 77. Rather than risk the loss of their homes, the Harrises have paid Green Tree according to the allegedly fraudulent and misleading terms outlined in the mortgage contracts. Cmplt. PP 4, 47, 77.

As a result of this sequence of events, the Harrises' brought suit against Green Tree, GT Discount, Coss, and the contractors identified above pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961 et seq., and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201-1 et seq. In addition, the Harrises alleged common law breach of contract, unjust enrichment, promissory estoppel, breach of fiduciary duty, tortious interference, fraudulent misrepresentation, and negligent misrepresentation claims.

In response to the Harrises' suit, Green Tree and the other defendants moved to compel arbitration and stay all proceedings in this action pending completion of arbitration. This motion was based on an arbitration clause that is contained in the secondary mortgage contracts signed by the Harrises. The clause, which appears in small print on the back and near the bottom of the one page form contract, provides as follows:

> ARBITRATION - All disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract, or the validity of this arbitration clause or the entire contract, shall be resolved by binding arbitration by one arbitrator selected by us with consent of you. This arbitration contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand

6

that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY US (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under the case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this contract. The parties agree and understand that the arbitrator shall have all powers provided by the law and the contract. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto the contrary, we retain an option to use judicial or non-judicial relief to enforce a mortgage, deed of trust, or other security agreement relating to the real property secured in a transaction underlying this arbitration agreement, or to enforce the monetary obligation secured by the real property, or to foreclose on the real property. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment or to enforce the mortgage or deed of trust, shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in the contract, including the filing of a counterclaim in a suit brought by us pursuant to this provision.

App. at 72–73.

On May 30, 1997, the Harrises filed a motion opposing arbitration. The Harrises argued that the arbitration clause was invalid and unenforceable because the clause lacked the requisite mutuality and was unconscionable. Moreover, the Harrises argued that the arbitration clause could not be

enforced because they had been fraudulently induced to enter into the secondary mortgage contracts.

After argument on defendants' motion to compel arbitration, the District Court issued a Memorandum and Order denying the motion.4 Because the clause "purports to bind only one of the contracting parties, the plaintiff borrower" and "leaves [Green Tree] free to litigate their claims if they wish to do so," the Court found it a "one-sided arrangement" that was "unconscionable." Harris v. Green Tree Fin. Corp., No. 97-1128, slip op. at 2 (E.D. Pa. Dec. 17, 1997). Thus, the apparent basis for the denial of Green Tree's motion to compel arbitration was the Court's determination that the arbitration clause lacked the requisite mutuality and, therefore, was unconscionable.5

II. Discussion

The parties do not dispute that the home improvement contracts involved in this dispute involve "commerce," as defined in 9 U.S.C. S 1. Thus, the arbitration clause at issue here falls within the scope of the FAA. See Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH, 585 F.2d 39, 43 (3d Cir. 1978).

Originally passed in 1925, the FAA was enacted to "revers[e] centuries of judicial hostility to arbitration agreements" by "plac[ing] arbitration agreements upon the same footing as other contracts." Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1113 (3d Cir. 1993) (quoting Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 225-26 (1987)). The FAA makes agreements to arbitrate enforceable to the same extent as

_____

4. The district judge also denied the Harrises motion for an order precluding defendants from contacting any of the putative class members with settlement offers. Harris, No. 97-1128, slip op. at 3. Our disposition of the arbitration issue makes this aspect of the order moot on appeal.

5. There is disagreement between the parties regarding the basis for the Court's denial of the motion to compel arbitration. The Harrises argue that the decision was based on unconscionability, while Green Tree contends that it was based upon a lack of mutuality. We address both potential bases for the District Court's ruling on appeal.

8

other contracts. Seus v. Nuveen & Co., 146 F.3d 175, 178 (3d Cir. 1998). Thus, federal law presumptively favors the enforcement of arbitration agreements. In re Prudential Ins. Co. of Am. Sales Practice Litig., 133 F.3d 225, 231 (3d Cir. 1998).

Federal law determines whether an issue governed by the FAA is referable to arbitration. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401-03 (1967); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995)("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-- but only those disputes--that the parties have agreed to submit to arbitration."). Pursuant to 9 U.S.C.SS 3-4,6 a federal court is authorized to compel arbitration if a party to an arbitration agreement institutes an action that involves an arbitable issue and one party to the agreement has failed to enter arbitration. See Southland Corp. v. Keating, 465 U.S. 1, 11-12 (1984).

Questions concerning the interpretation and construction of arbitration agreements are determined by reference to federal substantive law. See Moses H. Cone Mem'l Hosp. v.

_____

6. Section three of the FAA provides, in pertinent part,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court... upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until
> such arbitration has been had in accordance with the terms of the agreement....

9 U.S.C. S 3.

Section four of the FAA provides, in pertinent part,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for the agreement, would have jurisdiction ..., for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. S 4.

Mercury Constr. Corp., 460 U.S. 1, 25 n. 32 (1983)("[The FAA] creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate. ..."); Becker, 585 F.2d at 43. In interpreting such agreements, federal courts may apply state law, pursuant to section two of the FAA.7 Thus, generally applicable contract defenses may be applied to invalidate arbitration agreements without contravening the FAA. Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996); see also Perry v. Thomas, 482 U.S. 483, 492 (1987).

If, however, a court deems a controverted arbitration clause a valid and enforceable agreement, it must refer questions regarding the enforceability of the terms of the underlying contract to an arbitrator, pursuant to section four of the FAA. Prima Paint, 388 U.S. at 395 ("Under [section four of the FAA] with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that`the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue' "); Great Western Mortgage Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997)("Once such [a valid arbitration] agreement is found, the merits of the controversy are left for disposition to the arbitrator."); see also 13B C. W RIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE, S 3569 (2d ed. 1984)("[E]ven in a diversity suit or an action in state court if a ... transaction ... in interstate ... commerce is involved, the substantive rules contained in the [FAA], ... are to be applied regardless of state law.").

Accordingly, we decline to address arguments made by the Harrises that go to the validity of the home

_____

7. Section two of the FAA provides, in pertinent part,

> A written provision in ... a contract evidencing a transaction
> involving commerce to settle by arbitration a controversy thereafter
> arising out of such contract or transaction, or the refusal to perform
> the whole or any part thereof, ... shall be valid, irrevocable, and
> enforceable, save upon such grounds as exist at law or in equity for
> the revocation of any contract.

9 U.S.C. S 2.

10

improvement contracts. We leave those issues for the arbitrator. Here, we will address only those arguments directed to the validity and enforceability of the arbitration clause.

1. Mutuality

The doctrine of mutuality requires a contract to be based on an exchange of reciprocal promises. See 1A ARTHUR L. CORBIN, CORBIN ON CONTRACTS S 152, at 3 (1963). Modern contract law largely has dispensed with the requirement of reciprocal promises, however, provided that a contract is supported by sufficient consideration. See RESTATEMENT (SECOND) OF CONTRACTS S 79 (1981). Nevertheless, the District Court apparently concluded that the arbitration clause at issue here is unenforceable due to lack of mutuality because it gives Green Tree the right to litigate arbitrable issues in court, while the Harrises may only invoke arbitration.

Our decision in Becker, 585 F.2d at 39, provides guidance on the question of whether the arbitration clause should have been deemed unenforceable for lack of mutuality. Becker involved a contract that contained an arbitration clause that gave a West German company the option to arbitrate an issue in an American or German court or to litigate in an American court, while another party to the agreement, an American company, could only invoke arbitration in an American court. Id. at 42-47. The American company argued that this arbitration clause was unenforceable because of a lack of mutuality of obligations (i.e. the German company's choice of forum). Id . at 47 n. 15.8 We declined to adopt a requirement of equivalency of obligation, however. Id. In so doing, we stated, "We know of no such doctrine of complete mutuality as a matter of federal law, and, because Becker U.S.A.'s argument has no

_____

8. The central issue in Becker concerned whether the agreement containing the arbitration clause in fact was governed by the clause; the Court found that it was. 585 F.2d at 44-46. We then considered the American company's alternative argument that even if the agreement fell within the scope of the arbitration clause, the clause was unenforceable due to lack of mutuality. Id. at 47 n. 15.

support in logic, reason or precedent, we decline the invitation to adopt such a principle." Id.

Our finding in Becker that mutuality is not a requirement of a valid arbitration clause is consistent with that of most other federal courts that have considered this issue. See e.g. Doctor's Associates, Inc. v. Distajo, 66 F.3d 438, 451-53 (2d Cir. 1995) (holding that mutuality of obligation or remedy not required to enforce arbitration agreement if underlying contract is supported by consideration); Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp., 878 F.2d 167, 168-69 (6th Cir. 1989) (rejecting claim that arbitration clause is an independent contract that requires separate consideration to be enforceable); Dorsey v. H.C.P. Sales, Inc., 1999 WL 257687 at *3 (N.D. Ill. Apr. 20, 1999)(holding that arbitration clause is not unenforceable for lack of identical obligations); Randolph v. Green Tree Fin. Corp., 991 F. Supp. 1410, 1421-22 (M.D. Ala. 1997) (rejecting claim that arbitration clause that required one party to arbitrate all claims, while giving the second party the option not to arbitrate anything was invalid); Pate v. Melvin Williams Mfg. Homes, Inc., 198 B.R. 841, 844 (Bankr. S.D. Ga. 1996) (rejecting argument that arbitration agreement lacked mutuality because defendant company could sue over certain issues, while consumer had to arbitrate all claims). This substantive federal law stands for the proposition that parties to an arbitration agreement need not equally bind each other with respect to an arbitration agreement if they have provided each other with consideration beyond the promise to arbitrate.

Many state courts have considered this issue, as well, including in actions involving Green Tree. Like this Court in Becker and other federal courts, these state courts have concluded that an arbitration clause need not be supported by equivalent obligations. See, e.g., Smith v. Sanderson Group, Inc., 1999 WL 357412 at *8 (Ala. June 4, 1999)(rejecting claim that arbitration clause is unenforceable due to lack of mutuality of remedy); Parker v. Green Tree Fin. Corp., 1999 WL 130281 at * 2-4 (Ala. March 12, 1999) (rejecting claim that arbitration clause is unenforceable due to lack of mutuality of remedy and unconscionability); Lackey v. Green Tree Fin. Corp., 498

12

S.E.2d 898, 904 (S.C. App. 1998) (holding that mutuality of obligation existed because consideration flowed to each contracting party); Ishmael v. Dutch Housing Inc., No. 96AP100084, 1996 Ohio App. LEXIS 3974 *4-6 (Ohio Ct. App. 1997) (rejecting consumer's argument that defendant's exclusion from requirement to arbitrate certain issues made arbitration clause unenforceable).

While Pennsylvania courts appear not to have considered whether mutuality is required in arbitration agreements, Pennsylvania law, consistent with the most recent restatement of contracts, does not otherwise require both parties to an agreement to have equivalent obligations to satisfy the standard of mutuality of obligation. See Greene v. Oliver Realty, Inc., 526 A.2d 1192, 1195 (Pa. Super. 1987); Darlington v. General Elec., 504 A.2d 306, 316 (Pa. Super. 1986). As long as the requirement of consideration is met, mutuality of obligation is present, even if one party is more obligated than the other. Greene, 526 A.2d at 1195 ("Modern contract law recognizes that, `if the requirement of consideration is met, there is no additional requirement of ... equivalence in the values exchanged....' "). Each promise need not be supported by separate consideration. Id. at 1195.

Thus, the District Court's understanding of the significance of the "one-sided" nature of the arbitration clause contained in the contracts signed by the Harrises was in error. See Harris, No. 97-1128, slip op. at 2. It is of no legal consequence that the arbitration clause gives Green Tree the option to litigate arbitrable issues in court, while requiring the Harrises to invoke arbitration.

2. Unconscionability

Unconscionability is a "defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract." Germantown Mfg. Co. v. Rawlinson, 491 A.2d 138, 145 (Pa. Super. 1985) (quoting D. DOBBS, HANDBOOK ON THE LAW OF REMEDIES 707 (1973)). The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability. Bishop v. Washington, 480 A.2d 1088, 1094 (Pa. Super. 1984); see also Argo Welded Products, Inc. v. J.T. Ryerson Steel & Sons, 528 F. Supp. 583, 592-93 (E.D. Pa. 1981).

13

In evaluating claims of unconscionability, courts generally recognize two categories, procedural, or"unfair surprise," unconscionability and substantive unconscionability. See Ferguson v. Lakeland Mut. Ins. Co., 596 A.2d 883, 885 (Pa. Super. 1991); Bishop, 480 A.2d at 1095; Germantown, 491 A.2d at 145-46. Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language. See E. ALLAN FARNSWORTH, CONTRACTS S 4.28 (2d ed. 1990). This type of unconscionability involves, for example, "material, risk-shifting" contractual terms which "are not typically expected by the party who is being asked to `assent' to them" and "often appear[ ] in the boilerplate of a printed form." Germantown, 491 A.2d at 145-46. Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. See id., at 145-147; Denlinger, Inc. v. Dendler, 608 A.2d 1061, 1068 (Pa. Super. 1992). Thus, "[u]nconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." Bensalem Township v. International Surplus Lines Ins. Co., 38 F.3d 1303, 1312 (3d Cir. 1994) (quoting Worldwide Underwriters Ins. Co. v. Brady, 973 F.2d 192, 196 (3d Cir. 1992)).

    a. Procedural Unconscionability

In finding the arbitration clause at issue here unenforceable, the District Court wrote, "The relevant documents do contain (in very small print, on the reverse side) an arbitration clause...." Harris, No. 97-1128, slip op. at 1-2. This parenthetical language suggests the court's skepticism about the form of the arbitration clause. Although it is not clear that this skepticism was the basis for the court's denial of Green Tree's motion to compel arbitration, the Harrises argue on appeal that we should find the arbitration clause unenforceable because of its form. Specifically, the Harrises argue that the clause is procedurally unconscionable because it appears infine

14

print on the back of the relevant standard form contracts and because it did not appear at all in work orders that contractors required them to sign before beginning repairs or improvements to their homes.

Pennsylvania law provides support for certain claims of procedural unconscionability that are based on inconspicuous or unclear contractual language, in particular, if the contracting parties have unequal bargaining power. See Moscatiello v. Pittsburgh Contractors Equip. Co., 595 A.2d 1190, 1196-97 (Pa. Super. 1991) (finding disclaimer of warranties clause that appeared in fine print and on reverse side of sales agreement unconscionable, where disadvantaged party was not an experienced buyer); Germantown, 491 A.2d at 145-47 (finding unenforceable confession of judgment clause that appeared in fine print in boilerplate language of standard form contract, where party clearly did not understand its significance). These cases do not, however, concern arbitration clauses and are, therefore, inapposite to this case. Moreover, other Pennsylvania law conflicts with the holdings of these cases. See e.g. Standard Venetian Blind Co., v. American Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983) (stating that failure to read or lack of knowledge of clearly drafted contractual provision does not warrant avoidance or nullification of its provisions).

In any event, the FAA and federal law construing the Act govern the result in this case, and this authority does not support the Harrises' claim of procedural unconscionability. For instance, in Troshak v. Terminix Int'l Co., 1998 WL 401693 (E.D. Pa. 1998), the District Court for the Eastern District of Pennsylvania has held that language that is clear and ambiguous must be recognized and enforced. Id. at * 2 (citing Spigelmire v. School Dist. of Braddock, 43 A.2d 229 (Pa. 1945)). Thus, the Troshak court rejected a claim that an arbitration clause was unconscionable merely because it was on the reverse side of a contract; since the language directing the contracting party to the reverse side of the contract was clear and in plain view, the court found assent to the agreement. Id. at *3 (citing Standard, 469 A.2d at 566). Similarly, in McCullough v. Shearson Lehman Bros., Inc., 1988 WL 23008, at *3 (W.D. Pa. Feb. 18, 1988), the

15

District Court for Western District of Pennsylvania rejected an argument that an arbitration clause was unconscionable, where it was not printed more prominently than other parts of the contract. Accord Cantella & Co., Inc. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996) (holding that clause is not "hidden" if it appears on the back of a single-page document, where the "ARBITRATION" notice is in bold, and given a presumption that a party who signs a contract knows its contents).

Moreover, the Harrises' claim is not supported by Doctor's Associates, Inc. v. Casarotto, 517 U.S. 1652 (1996), the recent Supreme Court case construing the relationship between section two of the FAA and a Montana statute regulating the form of arbitration agreements. The statute at issue in Doctor's Associates required "[n]otice that a contract is subject to arbitration" to be "typed in underlined capital letters on the first page of the contract." Id. at 684. However, the arbitration clause at issue in the case was set out in ordinary type on page nine of a standard form agreement. Id. Thus, the clause did not conform to the requirements of the Montana statute; therefore, the Montana Supreme Court found the arbitration agreement unenforceable. Id. The Supreme Court reversed, holding that section two of the FAA preempted the Montana statute's notice requirements. Id. at 688. In so doing, the Supreme Court explained that courts may not invalidate arbitration agreements under state laws that single out the provisions of arbitration agreements for suspect status; such provisions must be placed "upon the same footing as other contracts." Id. at 687 (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974)).9

_____

9. The Court further noted in Doctor's Associates that the respondent had urged at oral argument that the arbitration clause might be invalidated as an unexpected provision in a contract of adhesion. The Court reiterated that the Montana Supreme Court had not based its decision on such a theory and the Court was not reviewing it. The Court cautioned, however, that "a court may not `rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what ... the state legislature cannot'." 517 U.S. at 687-88, n.3 (quoting Perry v. Thomas, 482 U.S. 483, 493, n.9 (1987).

16

Thus, we find that the arbitration clause involved in this action was not procedurally unconscionable.

### b. Substantive Unconscionability

According to the Harrises, the arbitration clause is substantively unconscionable because it allows Green Tree the option of litigating disputes, while it provides no such choice to them. They also argue that the clause is unconscionable because it allegedly provides that Green Tree does not have to obtain the Harrises' consent in selecting the arbitrator.

This argument overlaps substantially with the issue of mutuality, addressed above. As stated above, the mere fact that Green Tree retains the option to litigate some issues in court, while the Harrises must arbitrate all claims does not make the arbitration agreement unenforceable. We have held repeatedly that inequality in bargaining power, alone, is not a valid basis upon which to invalidate an arbitration agreement. See Great Western, 110 F.3d at 229 (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991)); Pritzker, 7 F.3d at 1118.

The Harrises then claim that the arbitration clause is unenforceable because Green Tree does not need to obtain the Harrises' consent in selecting the arbitrator. We note, however, that the language of the arbitration clause does not comport with the Harrises' interpretation of their rights regarding the choice of arbitrator. Rather, the clause provides that the arbitrator will be "selected by us [Green Tree] with the consent of you [the Harrises]." In the event that Green Tree and the Harrises do not agree on Green Tree's choice of arbitrator, section five of the FAA provides that either party may petition the court to appoint an arbitrator.10 This provision of the Act provides a safety valve

_____

10. Section five of the FAA provides, in pertinent part,

> If in the [arbitration] agreement provision be made for a method of naming or appointing an arbitrator ... such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the

17

for a party to an arbitration agreement who does not
consent to the other party's choice of arbitrator.

Thus, we do not find that the terms of the arbitration
clause are so unreasonably favorable to Green Tree as to
make the clause substantively unconscionable.

III. Conclusion

For the foregoing reasons, we will reverse and remand
this case to the District Court with directions to enter an
order granting defendants' motion to stay and to compel
arbitration.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

naming of an arbitrator ... then upon the application of either party
to the controversy the court shall designate and appoint an
arbitrator ... who shall act under the said agreement with the same
force and effect as if he ... had been specifically named therein; and
unless otherwise provided in the agreement the arbitration shall be
by a single arbitrator.

9 U.S.C. S 5.